IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                                  Cr. No. 16-455 MCA/SCY

JESUS BARRAZA-ROCHA, and
ARACELI LOPEZ-LOPEZ,

    Defendants.

## ORDER ADOPTING MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on the *United States' Objections to Proposed Findings and Recommended Disposition of Defendant Araceli Lopez-Lopez's Motion to Suppress Statements* [ECF No. 64] and *Defendant's [sic] Joint Objections to the Magistrate Judge's Proposed Findings and Recommended Disposition of Defendant's [sic] Joint Motion to Suppress* [ECF No. 63]. The Court has considered the written submissions of the parties, the record in this case, the applicable law, and is otherwise fully advised. With regard to both *Proposed Findings and Recommended Dispositions* the Magistrate Judge entered [ECF No. 60 and ECF No. 61], the Court has conducted a de novo review of those portions to which objections have been made, 18 U.S.C. § 636(b)(1), and finds itself in agreement with the Magistrate Judge, as set forth more fully below.

**I.**    **The United States' Objections to Grant of Defendant Araceli Lopez-Lopez's Motion to Suppress Statements**

    The United States does not object to the Magistrate Judge's findings of fact. ECF No. 64 at 2. Instead, it argues that the Magistrate Judge erred in finding that Defendant Lopez-Lopez's statements at issue should be suppressed because they were involuntarily obtained. *Id.*

1

Specifically, the United States first argues that the Magistrate Judge failed to consider relevant precedent and, as a result, misapprehended the applicable legal standard. Second, the United States argues that the Magistrate Judge did not take into account the applicable burden of proof – that the government must only prove voluntariness by a preponderance of the evidence. The Court disagrees.

The United States' argument that the Magistrate Judge applied the wrong legal standard is undermined by the fact that the United States and the Magistrate Judge rely on the same case as setting the correct legal standard. Both cite *United States v. Lopez,* 437 F.3d 1059, 1063 (10th Cir. 2006) for the proposition that a court must consider the totality of the circumstances and the "[r]elevant circumstances embrace both the characteristics of the accused and the details of the interrogation." *Compare* ECF No. 61 at 5 to ECF No. 64 at 7. In making his recommendation, the Magistrate Judge carefully considered the totality of the circumstances. The Magistrate Judge noted that

> weighing against a coercive environment is that the questioning was short and occurred not long after Defendant's arrest. Further, law enforcement never used an excessive show of force. Instead, law enforcement acted in a calm, professional, and polite manner, making sure Defendant was comfortable before and during questioning. *See Sharp v. Rohling*, 793 F.3d 1216, 1233 (10th Cir. 2015) (setting forth non-exhaustive list of factors to consider). Although Officer Moya made references to Defendant's children and the need to cooperate for their benefit prior to advising her of her rights, Officer Moya did advise Defendant of her *Miranda* rights and Defendant did waive these rights before she made any inculpatory statements.

ECF No. 61 at 13-14 (footnote omitted). On the other side of the balance, the Magistrate Judge noted

> other factors that tend to demonstrate coercion are that Defendant was alone and detained at the time of her interview (Audio Tr. at 8-9), had only a ninth grade education (Hearing Tr. at 151), did not have any apparent familiarity with the criminal justice system and was emotional and concerned about her kids prior to and during questioning (Video at 1:49:30 – 1:50:00, Interview at 5:30 forward). Also significant are law enforcement's repeated warnings to Defendant regarding the gravity of her situation, the fact that the turning point in the interview occurred

2

> just after Officer Moya implied that not cooperating could have consequences with regard to her children, and the fact that this implication occurred just after Defendant provided a non-inculpatory statement. Transcript at 14-15.

ECF No. 61 at 13. The Magistrate Judge also carefully explained how the numerous statements law enforcement made to Defendant conveyed to her that "not cooperating would negatively impact her children, including possibly having them taken away." ECF No. 61 at 7-12. The Court finds that, in weighing these factors, the Magistrate Judge engaged in the correct legal analysis and correctly determined that Defendant's post-arrest statements were not voluntarily given.

The United States further asserts that the Magistrate Judge's characterization of the holding in *Lynumn v. State of Illinois*, 372 U.S. 528 (1963), was incorrect. The Magistrate Judge stated, "the Supreme Court has made clear that when law enforcement secures a confession after telling a defendant that she will lose her children if she does not cooperate, the confession must be suppressed." ECF No. 61 at 5. The United States points out that other factors also existed to support the Supreme Court's decision in *Lynumn*. This is true. The Supreme Court pointed out that the threats to Lynumn

> were made while she was encircled in her apartment by three police officers and a twice convicted felon who had purportedly 'set her up.' There was no friend or adviser to whom she might turn. She had had no previous experience with the criminal law, and had no reason not to believe that the police had ample power to carry out their threats.

*Id*. at 534. As set forth above, however, many of these same additional factors exist in the present case. Defendant had no friend or advisor to whom she might turn. She had no apparent familiarity with the criminal justice system and had no reason not to believe that the police had ample power to carry out their threats. Although Defendant was not surrounded by three officers, most of the coercion occurred not in the familiar surroundings of her apartment, but while she was alone in an interview room at the police station. Further, she was in an emotional

3

state, and after law enforcement had repeatedly warned her about the gravity of her situation. Thus, even if *Lynumn* requires more than the Magistrate Judge stated *Lynumn* requires, more existed in this case.[1] Balancing the factors as the Magistrate Judge did, the Court finds that the United States failed to establish by a preponderance of the evidence that Defendant Lopez-Lopez's confession was voluntary. Because the Court finds that the United States failed to meet its burden by a preponderance of the evidence, it overrules the United States' objection that the Magistrate Judge failed to apply the applicable burden of proof.

## II. Defendants' Objections to Denial of Defendants' Joint Motion to Suppress Evidence Seized from Vehicle

While Defendants agree that the facts underlying their joint motion to suppress are largely undisputed, they challenge two of the Magistrate Judge's findings of fact. As set forth below, the Court overrules Defendants' objections. Defendants also object to the Magistrate Judge's conclusions of law. Specifically, Defendants argue that two separate law enforcement actions violated their Fourth Amendment rights: (1) Officer Campos' act of opening the door of the vehicle to check the Vehicle Identification Number ("VIN") and (2) Officer Campos' prolonged initial interrogation of Defendant Lopez-Lopez. Defendants then argue that, because the United States failed to establish a break in the causal chain of events between the illegality and the discovery of the evidence sought to be suppressed, the Court must suppress the evidence. Like the Magistrate Judge, the Court finds that Officer Campos' initial questioning of Defendant Lopez-Lopez *cannot* be justified as incident to a legal VIN check. The Court also agrees with the Magistrate Judge, however, that the questioning of Defendant Lopez-Lopez was otherwise justified by reasonable suspicion and, therefore, legal. Because law enforcement did not violate

---

[1] Because more factors indicating coercion existed than what the Magistrate Judge determined would be sufficient under *Lynumn*, the Court need not determine whether the Magistrate Judge correctly stated that a confession must be suppressed when law enforcement secures it by telling a defendant that she will lose her children if she does not cooperate.

Defendants' constitutional rights, Defendants' subsequent discussion of *Brown v. Illinois,* 422 U.S. 590 (1975), and its progeny, which address the attenuation doctrine, is misplaced. No constitutional violation occurred and, therefore, the United States need not establish a break in the causal chain.

    A.  <u>Objections to Factual Findings</u>

Defendants first object to the Magistrate Judge's finding that Officer Aguirre asked Defendant Barraza-Rocha in Spanish to provide his girlfriend's last name, but Defendant Barraza-Rocha was unable to do so. As the Magistrate Judge noted, Officer Campos asked Defendant Barraza-Rocha to provide his girlfriend's last name at two separate points in their encounter. ECF No. 60 at 3-4. The first time Officer Campos asked Defendant Barraza-Rocha to provide the name of his girlfriend, Defendant Barraza-Rocha responded, "Aracelli." Video at 10:00 to 10:05. Officer Campos then asked, "Aracelli que?" Video at 10:00 to 10:30. When Defendant Barraza-Rocha did not respond, Officer Aguirre, who Defendants acknowledge is a fluent Spanish speaker [ECF No. 63 at 7], asked Defendant Barraza-Rocha to provide the last name of his girlfriend. Video at 10:00 to 10:30. Defendant Barraza-Rocha responded that her first name was Aracelli, but that he did not know her last name. *Id*. Approximately ten minutes later, after Officer Campos' initial discussion with Defendant Lopez-Lopez, he again asked Defendant Barraza-Rocha to provide the last name of his girlfriend. Video at 20:10. Although Defendant Barraza-Rocha hesitated, this time he provided her last name. *Id.* at 20:15. Because Defendants only argue that the *initial* interrogation of Defendant Lopez-Lopez was unreasonable [ECF No. 63 at 7], only the first exchange regarding the last name of Defendant Barraza-Rocha's girlfriend is relevant. As set forth above, at the time of Officer Campos' initial exchange with Defendant Lopez-Lopez, Defendant Barraza-Rocha was not able to provide the last name of the

woman he claimed to be his girlfriend. Thus, the Court overrules Defendants' objection to this factual finding.

Defendants' next factual challenge concerns whether Officer Campos ever actually checked the VIN on the door or door jamb of the car. Defendants argue he did not. Because Officer Campos' back was to the camera and his upper body was obscured during much of his initial encounter with Defendant Lopez-Lopez, the Court cannot determine from the video whether Officer Campos checked the VIN on the door or door jamb. Video at 13:10 to 14:05. However, Officer Campos testified at the hearing that he did check the VIN on either the side of the door or door jamb [8/17/16 Tr. at 13]. Therefore, given the inconclusive video and Officer Campos' sworn testimony, the Court concludes that Officer Campos did check the VIN and overrules Defendants' objection to this factual finding.

The Court's decision, however, does not turn on the resolution of this fact. Indeed, while the Magistrate Judge found that Officer Campos could legally check the VIN on the door or door jamb as long as he did not physically enter the car, the Magistrate Judge determined that Officer Campos' questioning of Defendant Lopez-Lopez exceeded that which could be justified as part of a valid VIN check. ECF No. 60 at 15. Thus, the Magistrate Judge rejected the VIN check as a basis to justify the initial questioning of Defendant Lopez-Lopez. Instead, the Magistrate Judge found the initial questioning of Defendant Lopez-Lopez was justified for a totally different reason - Officer Campos' initial encounter with Defendant Barraza-Rocha provided reasonable suspicion (to the extent any was necessary) to justify the initial questioning of Defendant Lopez-Lopez. Therefore, whether Officer Campos actually checked the VIN is irrelevant to the Magistrate Judge's recommendation and the Court's adoption of that recommendation.

B.  Officer Campos' Initial Questioning of Defendant Lopez-Lopez was Lawful

Defendants argue that Officer Campos' initial questioning of Defendant Lopez-Lopez was unlawful because he had no legal basis to open the door to check the VIN.  In finding that the initial VIN check was legal, the Magistrate Judge relied on *United States v. Chavira,* 467 F.3d 1286 (10th Cir. 2006).  Defendants do not argue that the Magistrate Judge misapprehended *Chavira*.  Instead, they argue that the language the Magistrate Judge relied on was dicta and consequently must give way to the Tenth Circuit's earlier decision in *United States v. Caro*, 248 F.3d 1240, 1242 (10th Cir. 2001).  The Magistrate Judge pointed out that these two cases are in tension. ECF No. 60 at 14.  The Magistrate Judge, however, did not find that they were irreconcilable.  To the contrary, the Magistrate Judge determined that the cases can be reconciled by applying *Caro*, and suppressing evidence when a police officer physically enters a vehicle to check a VIN, and applying *Chavira*, and not suppressing evidence when a police officer does not physically enter the vehicle to check the VIN. ECF No. 60 at 14-15.  The Court agrees with the Magistrate Judge's analysis of these cases.

Moreover, as set forth above, the Magistrate found that Officer Campos' alleged VIN check of the door or door jamb could not serve as a basis to support his questioning of Defendant Lopez-Lopez.  Instead, "Defendant Barraza-Rocha's inability to provide the last name of his girlfriend, with whom he was traveling over a long distance, provided Officer Campos with sufficient reasonable suspicion to ask Defendant Lopez-Lopez about her travel plans and travel companions." ECF No. 60 at 16.  During a lawful stop, even without reasonable suspicion, a police officer may ask a passenger's name, the name of the driver, about the connection between them, and about their travel plans.  *United States v. Zubia-Melendez*, 263 F.3d 1155, 1161 (10th Cir. 2001).  Further, for reasons of officer safety, a police officer may ask a passenger to step out

7

of the car. *Maryland v. Wilson*, 519 U.S. 408 (1997).  The Court agrees with the Magistrate Judge that "[c]onversing with Defendant Lopez-Lopez with the driver's side door open while she is seated in the passenger seat creates even less of an intrusion than having her step out of the car." ECF No. 60 at 17.  The Court also agrees that, to the extent Officer Campos' limited initial questioning of Defendant Lopez-Lopez went beyond what is allowed absent reasonable suspicion, reasonable suspicion existed to support the questioning.

The Court also notes that, despite filing a joint motion, Defendant Lopez-Lopez, as the owner of the vehicle searched, is in a different position than Defendant Barraza-Rocha, who had no property interest in the vehicle.  Because Defendant Barraza-Rocha had no expectation of privacy in the engine block of the car where the drugs were found, he cannot demonstrate a factual nexus between the constitutional violations being alleged and the evidence found.  Thus, even assuming the validity of Defendant's objections, suppression of the drugs found in the car would be inappropriate as to Defendant Barraza-Rocha. *See* ECF No. 60 at 25-26.

The remainder of Defendants' brief is devoted to discussing the attenuation doctrine which, as Defendants acknowledge in the heading of section three of their brief, is only relevant when a constitutional violation is first established. *See* ECF No. 63 at 9.  Because the Court finds that no constitutional violation occurred, it will not address Defendants' attenuation arguments.

**WHEREFORE, IT IS HEREBY ORDERED** that the United States' *Objections* are overruled and the Magistrate Judge's *Proposed Findings and Recommended Disposition* [ECF No. 61] are adopted as the decision of the Court.

**IT IS FURTHER ORDERED** that Defendants' legal *Objections* are overruled and the Magistrate Judge's *Proposed Findings and Recommended Disposition* [ECF No. 60] are adopted as the decision of the Court.

**ORDERED** this 8th day of March, 2017.

_____
M. CHRISTINA ARMIJO
Chief United States District Judge